is now in session. Please be seated. Good morning. I'm Judge Bennett, and with my colleagues Judge Van Dyke and Judge Holly Thomas, welcome to the Ninth Circuit. We have one case on the argument calendar today, but we've submitted a number of cases without argument. Issa Gare Arias v. Garland has been submitted. Peoples v. Kijikazi is submitted also. Nolan v. Kodiak is submitted. Immigration Solutions v. Stifler is submitted, and Clark v. Silak Insurance Company is submitted. With that, we will move to the one case on the argument calendar, and it's my understanding that the Appelees have split their time three ways, 5-5-5. When you get up to argue, the time on the clock will be your fives, so it's not going to be fifteen going down. So you'll each have five, and your time will each expire at the end of five. So with that, Mr. Pinsky, whenever you are ready. Good morning. May it please the Court, Greg Pinsky for the Plaintiff's Appellants, and may it please reserve five minutes for rebuttal. The District Court must be reversed for two errors. The first, a procedural error. The District Court's failure to address leave to amend is reversible error on a Rule 12b1 standing motion. Importantly, the Court failed to address leave to amend which had been raised multiple times throughout the record, and its silence on that and its failure to explain why it didn't grant leave to amend is reversible error under this Court's precedent. Did you follow the local rules on amending? Yes, Judge Bennett, we did. And as we pointed out in our brief, Judge Morris has specific standing orders related to amending amendments. In this particular instance, the amendment time period had not passed. He doesn't require leave to amend. In our situation, we had believed that our pleading was sufficient and that there was no reason to amend. And I think courts have recognized that it makes little procedural sense for a party on the one hand to argue that their pleading is sufficient and meets the appropriate standards, but then on the other hand, file a separate amendment just in case. So we complied with Judge Morris's standing order, which is different than the local rule, and we've highlighted that in our brief. All right, counsel, I want to get to the issue of primary importance to me. Yes, sir. Let's assume that hypothetically, I do not believe that your clients have standing to pursue a claim based on, and I'll just invent the name, Blue Cross paying too much. That hypothetically, the only claim that they could assert for which they have standing is when they have personally been injured in their business or property. So here's my question, and I'm looking at the second amended complaint. That's the right one, right? Yes, sir. So with regard to actual out-of-pocket losses, like I got less because they took money from the tortfeasor that would have come from me. I got less because they put a lien on my attorney's trust fund and instead of getting $50, all I got was $30. Are there any allegations in the complaint that specifically allege that any of the named plaintiffs were themselves out specific amounts or even I'm out this money because of the charge master? Is there anything in the second amended complaint with anything like that level of specificity? No, Judge Bennett. All right. Can you allege that if you were given the opportunity to amend? Yes, Judge Bennett. Tell me what you can allege. All right. The amended complaint will make clear that this case is about the unreasonable liens that have been filed, and that's what's required under Montana laws. Okay, but my question, and maybe I'm wrong on the law, my question is for Blaine, Darko, Flower, et cetera, et cetera, et cetera, the named plaintiffs, whoever they are, can you allege that on April 5th, 2017, the tortfeasor, tortfeasors insure because of this putatively illegal charge master policy, satisfied a lien for $50 that otherwise would have gone to plaintiff X? Yes. Yes, Judge Bennett. So tell me about those. Tell me what you can allege. All right. So at the hearing before the district court, and that's at the record at 48 to 49, I identified the harms that each plaintiff has suffered. Now, admittedly, I didn't identify it in monetary terms. Globally, we have $297,000 worth of liens that have been asserted against the 10 named plaintiffs. So when this is remanded, and if we are given the opportunity to amend, I will make it clear how every one of the 10 plaintiffs has had a lien asserted against them that does not represent the reasonable value of the services, that has consumed monies that are for other damages that they've suffered, whether it's a lawsuit or a lawsuit. So you would assert, you are representing as an officer of the court, that if you were given the opportunity to amend, you would assert that as a result of what you claim are the illegal charge master liens, plaintiff A ended up getting $50. And if it weren't for the illegal, the putatively illegal charge master liens, plaintiff A would have gotten $75. Yes. Yes, Judge Bennett. Now, those amounts No, I understand. I'm making those up. But you as an officer of the court are representing to the panel that if you were given the opportunity to amend, you would be able for all or substantially all of the individual plaintiffs make an allegation, essentially what I've just said, obviously with the right dates, numbers, amounts, etc. Yes, Judge Bennett, we can do that. Can I follow up on that? Yes. I want to make sure that you understand something specific about it. Because the question that Judge Bennett is asking is somewhat different than what it seemed like you were saying earlier, which is, I think what Judge, at least in my, I'll speak for myself. Okay. If I don't think that filing a lien is injury by itself, and if I don't think that, let's say you have a $100,000, you know, the third-party Torfester's automobile insurance has a $100,000 cap or something. And so if they file a lien for $50,000, but your client only is going to have $25,000 worth of non-medical claims, then you wouldn't use up that $100,000, right? And if I didn't think that would cause you damage, but if I thought the only thing that would cause you standing injury was if, say, there is only a $50,000 limit on that policy and the lien that they filed or the charges, let's just forget about the lien, the charges they filed were $50,000 and your client had another $10,000 of non-medical damages that they tried to serve, but the insurance said, too bad, you've reached the limit, we can't pay you. That, I think, you would have a stronger case for the fact that that is actual injury for standing. Do you have any specific examples of that? Let me make sure that I understand your question, Judge Van Dyck. So are you asking me, do we have a named plaintiff where the entirety of the insurance coverage has been consumed by the unreasonable lien? Is that the question you're asking me? The entirety of the insurance coverage has been consumed by actually paying out, because if they put a lien on it, but then the lien goes away and your client, so to where your client, do you have any examples where your client did not actually get some money because they ran up against the limit of the insurance? I think those are two separate questions, so let me answer your first one directly first. Do we have a plaintiff where the entirety of the recovery has been consumed by the unreasonable lien? No. No, not one of these 10 plaintiffs. Now, to answer the second question, which I think is analytically distinct, do we have named plaintiffs who have had their tort recoveries reduced because of the unreasonable value of the liens? The answer to that question is yes. So they might have gotten 10, but for the lien they would have gotten 20? Yes. Yes, Judge Bennett. And that, we would maintain that that is a harm in itself. Hold on a second, because in your briefing at least, I just want to make sure we're all understanding each other here. This is important. Because in your briefing, you do sometimes say that they might have gotten this or they might have gotten that. But in reality, you're talking about insurance and stuff. So by they, in answer to Judge Bennett's question, when you say they got 10, we're just using numbers, but they might have gotten 20, but they got 10. Who is they? They is your actual client? Money? Or is they the medical provider or the insurance had to pay out 20 versus 10? I've confused you, Judge Van Dyke, with the inappropriate pronoun, I suppose. They, in this instance, referring to the plaintiff. So the plaintiff in that instance, their recovery has been diminished. The liens, not representing the reasonable value of services, have consumed monies that may go to lost wages, for instance. And that's an example, we gave an exemplar example in the complaint. So I understand the idea of this. I understand the idea and I understand the example you gave. But what I'm trying to figure out is how is that different than the examples where they actually ran up against the limits? If they didn't run up against the limits, if there's a $20,000 lien from one of these defendants here and they haven't run up against the limits, then why would that keep them from getting the full amount of their, say, lost wages claim? You see what I'm saying? I don't understand why. And I'll explain that, Judge Van Dyke. The, let's take the example of lost wages, okay? So if you have someone and there's a $50,000 insurance policy limit, and an individual has $30,000 worth of lost wages, okay? And because of the unreasonable liens, the hospitals get paid $40,000 of the $50,000. Then that individual that has $30,000 of lost wages, their recovery has been diminished because of the unreasonable liens. Yeah, because they run up against the $50,000. So you add $40,000 and it only leaves $10,000 for them. And so instead of getting $30,000, they get $10,000. So I understand the math. I don't understand why your answer to me then was to the other question, well, no, we've never run up, we don't have actually any specific examples of running up against the limits for these 10 plaintiffs. What's the difference between that and what you're saying here that they, I don't understand the difference. There is no difference. It's harm in both instances, Judge Van Dyke. And so in the example that you gave, you asked me originally whether or not, say for instance, we had an individual with $50,000 worth of insurance coverage and they had $100,000 worth of unreasonable medical liens and it consumed the entirety of that. I don't have that situation. So you were, whether you were interpreting Judge Van Dyke's question correctly or not, you were saying you may not have a case where the putatively illegal lien was in excess of the entire amount of the coverage, but for every plaintiff, you have a case, you have a circumstance where the putatively illegal lien took away enough of the available coverage that your client got less in actual money than they would have gotten, but for the existence of the putatively illegal lien. Yes, absolutely. You're saying that just to make sure. We're kind of talking to each other. I mean, it's because we're really trying to figure out what your theory is. Is it true that your claim is that that's true for every single one of your named plaintiffs? Every one of them has run up against the limits in the sense that we're talking about? Yes, in the sense that they have had their recoveries reduced. So the liens are unreasonable in every instance. In all 10 plaintiffs, the liens are unreasonable. I'm sorry, but the recoveries were reduced because they hit the maximum possible limit of payout? I'm not sure I understand your question, Judge Thomas. Just going back to the example that we were just talking about with a $50,000 insurance limit, a $30,000 lost wages claim, and then a payout to the hospital of $40,000. So not obviously with those numbers, but every plaintiff has a scenario that's similar to that in terms of the hospital payout plus the lost wages or whatever it is would exceed that maximum limit. Yes, Judge Thomas. All right. So, counsel, we have taken up a lot of your time with our questions, mostly me. So this is what I'm going to do. If you have a final point or two you'd like to make now, please make it, and we'll give you time for rebuttal as well. Thank you. I'll make one point, and I appreciate the court's graciousness in that regard. The second error that I didn't get a chance to talk about is simply the court's resolution of the factual issues under a Rule 12b1 motion that go to the merits, and this notion that the reasonable value of the services can somehow be resolved on a Rule 12b1 motion is error, and I'd be happy to talk about that in my rebuttal, but I appreciate the opportunity. Thank you. Thank you. So, Mr. Weir, you're going first. Am I pronouncing your name right? You have it exactly right, Your Honor. Okay. Whenever you're ready. May it please the Court, Charles Weir for the Benefis Defendants. I think you guys were, you put your finger right on the issue. And the question is, if they're allowed to amend, to allege what Mr. Pinsky represented to the Court that he can, is it actually going to change the result here? Well, before you get to whether it's actually going to change the result, this was basically a standing dismissal, right? We moved on standing grounds because we did not think that the plaintiffs could complain about somebody else doing too much. Right. You believe that the complaint should have been dismissed, lack of standing, they didn't sufficiently allege actual injury to the named plaintiffs. That is correct. So, as a matter of law, that dismissal has to be without prejudice, right? That dismissal, yes. So, if they want to bring the claim he described, sure, but that's a fundamentally different claim than the one that- But nonetheless, that's a dismissal that has to be without prejudice. This dismissal was with prejudice. This dismissal was with prejudice. So, that's an error. I don't think it was an error for a couple of reasons. Okay. So, it was not an error because they both lack standing and they're wrong. Now, we moved on standing grounds, but that doesn't preclude this Court from examining the entirety of the record and determine whether or not the dismissal with prejudice was in fact appropriate. We cited cases in our brief. It is not the opinion that you're ultimately weighing in on. It's the judgment, and there isn't an error in the actual result here. So, you would like us to essentially rule that the Chargemaster process, it's under Montana law, it's all legal, there's nothing wrong with it, and because of that, we should say, well, it's all illegal and, you know, I mean, it's all legal, and even if they actually have standing, because they could theoretically alert that they're out $3 a piece, that we should move to the entirety of the merits and say, even if they did have standing way down the road, they would lose anyway, so let's short circuit it and have them lose now. Well, I wouldn't exactly frame it that way, but the, I think we get, our position is that you get to the, you get to the same place. So, why do, why do I think that is, that is the case? The, and it can, I do believe it also can be framed as a standing issue, which is how, why we frame it. So, under Montana law, the statute specifically permits hospitals to both place liens on, you know, insurance proceeds, you know, proceeds from a state farm, for example, and it allows the, for the value of that lien, it does not require that they provide any sort of discounts. So, as a matter of Montana law, under the statute, the hospitals are allowed to submit liens at the full charge master rates. Also under Montana law, so that gives, that gives the hospitals the right to do exactly what they did. Also under Montana law, the plain, and this is where the standing piece comes in, the plaintiffs do not have a property right in the delta between the discounted rate that would be for Medicare or the discounted rate that would be in a insurance contract that the hospital would sign. Okay, well, let me give you a, let me give you a hypothetical that doesn't turn on the merits. So, if plaintiff says, I had a hundred dollars worth of compensable injury, and the tort, the putative tortfeasor has no money, so all the money is coming from the tortfeasor's insurer, and the insurer wouldn't pay me the hundred dollars because the entirety of the policy was eaten up by the charge master. So, that lien came first, they paid that lien, there was nothing left over, I got nothing. They gave me zero. Isn't that standing? Saying, I am out the hundred dollars I would have gotten but for the charge master lien, doesn't that at least allege an injury, in fact, even if they ultimately can't win? The, there's three components to standing. So, theoretically under your hypothetical, is that a potential injury in fact? Potentially, but there's three elements to the standing analysis. And the third element is that the, what you are complaining about, the case, you know, court presiding over it has to actually grant relief relative to that. So, the case that Mr. Penske described, which is, gee, my, my plaintiffs ran out of money, and all of their, they weren't effectively made whole, all of their damages weren't covered. That is a fundamentally different case and a fundamentally different damage than, hey, let me bring a class action challenging the validity or the ability of a hospital to issue a lien. I, I agree with you. So, so it doesn't, it is still a standing component, even if there could be an injury at the end of the day. So, let me ask you another question. So, let's assume we were to hypo, if the, if the district court had dismissed this case without prejudice, then Mr. Penske could have the next day refiled a different complaint for these same plaintiffs with additional allegations, right? Yeah. And if you wanted to, if you wanted to refile, I mean, you would have. But, but he could have done it the next day, yes? Yes. But with the dismissal with prejudice, he couldn't, right? I, I actually don't agree with that. So, you think he could have, even with a dismissal with prejudice, that it wouldn't be barred by claim preclusion? It depends on the claim. So, our position is the claim he described to you is a fundamentally different claim than the claim he was brought, that was brought, and the claim that was dismissed with prejudice. So, the case he just described is a case that has different defendants, is analyzing completely different issues. It cannot be, cannot be adjudicated on a class action basis. So, if, if it. Well, it theoretically could be, but, but the barriers would be a lot higher. Yeah. So, this was something that was recognized by the district court below as well. And there was, you know, colloquy during the, during the oral argument, because if you think about it, what would the, to determine whether or not the plaintiff, quote, ran out of recoverable funds, and, and whether that would trigger some sort of equitable allocate, allocation among the stakeholders. Individualized issues would predominate, I think is right. Yes. Yes, that would be your argument. But that doesn't, that wouldn't, in theory, mean that, I'm intrigued by your point that this is a, that they're so different that he would not, that they would not have been barred by claim preclusion. If there, why would it be different defendants? Well, the, the tortfeasor would be a defendant. I mean, you can't, you can't say there's no money to recover and not have the tortfeasor present. I'm having, I'm having trouble seeing that. If, if the allegation, again, may be completely meritless, but if the allegation is the, the defend, the, the current defendants illegally sucked money away from the tortfeasor that I didn't get, and they actually got it, I mean, maybe he would want to name the tortfeasors too, but I don't see why it wouldn't be a claim against the, the same defendants if it's, they asserted an illegal lien on funds that otherwise would have gone to me. It's hard for me to see why they, if that claim had merit, why they wouldn't be the defendants. Why the, why the, why the current defendants wouldn't be the defendants, if they're the ones who ended up paying or getting the money. Well, you know, it goes back to, again, two things. The, the ability of the hospital to issue the liens in the first place is sanctioned by Montana law, and it, and secondly, the plaintiffs don't have a property interest in that delta. You know, so the, the notion that the lien can, you know, the notion that the lien is per se illegal, I mean, it's just fundamentally not. I mean, they're, they're wrong. Because that's your view of Montana law. That, that is, yes, that's definitely our view of Montana law. I mean, you know, one of the things in the briefing before this court that, you know, the, the key statute on this is, is not even, you know, Montana Code 33-110. Plaintiffs don't even mention it. I mean, it specifically says we are allowed to issue liens at the charge master rates. Now, whether or not in the course of discussions with the insurance company, the insurance company pays that is a whole different issue. But the lien aspect of it, we are entitled to ask for that. So whether or not that is what's ultimately paid is an issue between the insurance company and the provider. Okay. So I've taken you a lot over your time. Do you have a final point or two? You know, I think, I think we've actually got to the heart of it, you know. Oh, sorry, go ahead. Oh, of course. As many as you want. So, so the, back to the question about the tort professors having to be in the case. I was just thinking about that. Just because you run up against their automobile policy limits, I suppose, if they, if the tort professor has deep pockets themselves, then presumably, so how would that work as far as, you know, presumably to make this showing, you would, you would have to show that they genuinely don't have the ability to recover because of this. So what would you, is there a way you would show that without having to sue the, I mean, I guess you'd get discovery into the, you'd subpoena the, the third party tort fester and their insurance or something? Yeah. If their argument is that there should be some sort of equitable allocation because of a lack of funds, that is, that has got to be done on a, that's an individualized case. No, I know it's individualized. I'm trying to figure, I'm going back to your, it's a different case because there has to be different defendants. And your point was that you had to bring them in. I'm just trying to figure out, do you actually have to bring them in the tort fester or do you, and their insurance, or do you, can you somehow prove your damages under this by, by not bringing them in, I suppose by subpoenaing them and. I mean, I suppose, I mean, again, you know, it would, it would certainly depend, it would certainly depend on the case. But if the argument here is that we have standing because of some sort of exhaustion theory, well, you know, where's the exhaustion? You know, you would have to. No, what I'm trying, what I'm trying to figure out is whether or not they were dismissal, assuming that dismissal with prejudice was wrong, whether they're prejudiced by that, because they could have brought the case, you know, like for your, for your view, they could, it would be a completely different case, but they could have brought a third amendment complaint and be a very, and bring that very different case. But now they might not be able to. Well, what they wouldn't be able to do is they wouldn't be able to go back and say, we challenged the, we challenged the fact that you put a lien on it. You know, if, again, there's a difference between the ability to lien and ask for a specific payment, which Montana law specifically allows the hospital to do and sanctions that. And, and ultimately what may or may not be paid. So, you know, if they want to bring a claim that says these proceeds should be allocated differently among the stakeholders. And, you know, if Plaintiff Haro was to do that, okay, fine. But again, there's nothing that in this case regarding whether or not a lien is invalid because we attach the full charge master rates to it. The remedy related to this case, it's going to have nothing to do with the case that Mr. Pinsky just described. They're fundamentally different actions. All right. Thank you, counsel. May it please the court, counsel. My name is Gary Zadig. I'm here on behalf of Benefice Hospital. Recognizing we filed a joint brief, I don't intend to repeat Mr. Weir's arguments. I'm going to add a couple of extra points. Number one, of course, Montana law is controlling and the plaintiffs never cited in their opening brief or reply brief 3331110 sub 1, which expressly says the lien does not have to be at the discounted rate. Three Montana cases all unanimous decided while Judge Morris is on the Supreme Court, Conway, Harris, and the State of Donald all upheld the right to file a lien. Also held that the injured plaintiff is not entitled to, has no property interest in the dealt with the difference between, say, a negotiated rate with a private health insurer and the charge master rate or between Medicare and Medicaid and that had no property right in that. What the plaintiffs are trying to turn this case into is a made whole equitable argument. Made whole is not recognized in Montana except under insurance. Subrogation has no application here. But we also cited to this court the Blanton decision, which at the end of that decision, the court said, and the plaintiffs were making this argument to DPHHS that, well, we should be able to get something here so that repaying these hospital liens doesn't eat up everything. The court said you have no right to that. There's no made whole right. If the tortfeasor unfortunately doesn't have enough insurance, the hospitals are still entitled to be paid for the services they provided at their regular rate. So let me ask you a hypothetical, which I know is not the allegation here. So let's say the hospital put in a lien and it was just totally wrong. They put in the lien on John Smith, but it was actually Sally Doe who got the treatment. Could you sue under that, that that lien got paid off and it was just a mistake of fact or the bookkeeper trying to embezzle money? That's correct. And the statute, that is wrong and that could be sued on. The statute of Montana cited in our brief also allow the insurer to negotiate with the hospital if it's trying to save money to pay these other damages. It's allowed, but it's not mandatory. Okay. Thank you. Good morning. May it please the court, Julie Shepard of Jenner and Block on behalf of the one issue we're talking about this morning, your honors, with respect to the concept of illegal liens. And my colleagues have touched on it, but I want to amplify one point. In addition to 33-3, I'm sorry, 33-1-1-10, which allows liens to be placed and to not be discounted. That's clear law. And again, never mentioned in the appellant's brief at all, never addressed before this court and never, they just never take that issue on. Instead, they look to you to look and they keep this concept of for the reasonable value of the services. And they cite to 71-3-1-1-7. That statute has nothing to do with the issues before this court. That statute deals with the situation where someone subject to the lien, i.e. the insurance company, pays someone not the healthcare provider, but pays someone for that, on that amount. And then they, but the hospital or healthcare provider is never paid. So in that context, the insurance company or the liens party remains on the hook for the quote unquote reasonable value of the services. Meaning if they pay again, they have the ability to challenge whatever they want to challenge. From the hospital's perspective, the reasonable value of the services would remain the charge master rates. But that statute, again, has nothing to do with the facts before this court because the plaintiffs aren't the insurance company. The plaintiffs are the injured parties. And so the underlining premise of their arguments is that the liens are improper because they're not for the reasonable value of services because there's some factual question about charge master rates. But that is not allowed under 33-1-110, which is the statute that they never address. There is nothing illegal under Montana law about imposing charge master rate liens in this context. They don't have to quote unquote, they don't imply a factual issue. They don't have a reasonable value of services component to them. So that is just a fundamentally underlying premise that is not allowed. And what the plaintiffs actually are trying to do here is ask this court to wipe out 33-1-110 without even talking about that statute. And I submit that that's improper. With respect to, and there's, with respect to the Judge Van Dyke you were asking about the tort fees and the accident and the other type of recovery, you're very right that there are other sources for the plaintiffs, the injured parties to go after. And that's, you know, completely ignored by the plaintiffs in this case. At the end of the day, we believe that Judge Morris's determination that the plaintiffs do not have standing and his entry of judgment were correct and should be the plaintiffs didn't pay anything and have conceded that the fact that the second minute complaint really doesn't allege standing and his entry of judgment was proper. But even if this court decides that it disagrees with, that the district court's path to judgment was incorrect and it would have taken a different path or that it was improper to dismiss with prejudice, the And as Mr. Weir was articulating as well. And for the reasons briefed and argued today, we respectfully request that the judgment be affirmed and that's the appropriate decision here. Thank you. Thank you. Counsel, we'll put three minutes on the clock for you for rebuttal. I want to pick up on the substantive issues here where the district court delved into the substantive record and resolved the factual issues. First of all, picking up on this notion that Montana Code 331110, in the words of my friend, the lien doesn't have to be at a discounted rate. I want the record to be clear. 33-1-110 says absolutely nothing about liens. The word lien does not appear in that statute. What that statute says is that the hospital is not required to provide a discount if there's casualty or property insurance that's involved. That's all that it says. That statute has to be reconciled with the lien statutes, which are at issue here. And the notion that a provision within the medical lien statute doesn't apply to this case is just plain wrong. Under the Medical Lien Act, Section 1114 allows the hospitals to file a lien. Under Section 1117 of that Act, which is liability for failure to recognize a lien, if they want to enforce the lien that they filed, it has to be for the, quote, reasonable value of the services. And here, the district court finding that there was no standing, at that point, the analysis should have ended. The district court, if there was no standing, which of course we disagree with, the district court should have simply dismissed the matter without prejudice, provided an opportunity to amend, and we could have addressed any of the deficiencies that the district court found. The problem, however, is that the district court then weaved itself into a substantive issue. And it substantively ruled on the merits that liens at the chargemaster rates are permissible under Montana law. In order to come to that conclusion, however, you have to resolve the factual issue of whether the chargemaster rates represent the reasonable value of the services. Reasonableness, as the then, is difficult to resolve on summary judgment, let alone resolve on a Rule 12b1 standing motion. It's that sequence of errors that the district court made that command reversal and a remand in this case with the opportunity for the plaintiffs to amend their complaint. Thank you. Thank you. We thank counsel for their arguments, and the case just argued is submitted. With that, we are adjourned for the day and the week. Thank you.
judges: BENNETT, VANDYKE, THOMAS